UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

JOSIE GARCIA, and NANCY LaGRANGE,    )
guardian ad litem of ALIZE MARTINEZ,    )
                                                              )         3:09-CV-00681-LRH-RAM
                    Plaintiffs,                           )
                                                              )
    v.                                                      )         ORDER
                                                              )
STEVEN HATCHER, an individual, STATE )
of NEVADA ex rel., its GAMING CONTROL )
BOARD, A-1 CHEMICAL, INC., a Nevada    )
Corporation, BRAD PHILLIPS, an individual )
and DOES 1-20,                                    )
                                                              )
                    Defendants.                        )
_____ )

Before the court is Defendants Steven Hatcher and the Nevada State Gaming Control

Board's ("Board") Motion to Dismiss (#9[1]).  Also before the court is Defendants A-1 Chemical,

Inc. ("A-1") and Brad Phillips' Motion to Dismiss (#11).  Plaintiffs Josie Garcia and Nancy

LaGrange (collectively "Plaintiffs") filed responses to both motions (##12,13) to which Hatcher

and the Board (#14) and A-1 and Phillips (#15) replied.

**I.      Facts and Procedural History**

This is a tort case arising out of the death of Santiago Ray Martinez.  On January 7, 2008,

Hatcher, an Enforcement Agent of the Board, shot and killed Martinez in Washoe County, Nevada.

While off-duty, Hatcher commandeered an A-1 company vehicle driven by Phillips.  Phillips gave

_____

[1]Refers to the court's docket entry number.

1   Hatcher a ride and pursued the vehicle in which Martinez was riding.  Hatcher subsequently

2   identified himself as a law enforcement officer and ordered the car in which Martinez was riding to

3   stop.  Although Hatcher had radioed for back-up from the Reno Police Department, he used his

4   duty pistol to shoot and kill Martinez.

5        Garcia, Martinez's mother, and LaGrange, the legal guardian of Martinez's minor daughter,

6   filed this action alleging: (1) a violation of the Fourth Amendment prohibition on unreasonable

7   searches and seizures; (2) a violation of the Fourteenth Amendment right to due process;

8   (3) wrongful death; (4) battery; (5) intentional infliction of emotional distress; (6) negligence; and

9   (7) negligent hiring, training, supervision, and retention.

10  **II.   Legal Standard**

11       Defendants seek dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6).  To survive

12  a motion to dismiss for failure to state a claim, a complaint must satisfy the Federal Rule of Civil

13  Procedure 8(a)(2) notice pleading standard.  *See Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d

14  1097, 1103 (9th Cir. 2008).  That is, a complaint must contain "a short and plain statement of the

15  claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The Rule 8(a)(2)

16  pleading standard does not require detailed factual allegations; however, a pleading that offers only

17  "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not

18  suffice.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550

19  U.S. 544, 555 (2007)).

20       Furthermore, Rule 8(a)(2) requires a complaint to "contain sufficient factual matter,

21  accepted as true, to state a claim to relief that is plausible on its face."  *Id.* at 1949 (internal

22  quotation marks omitted).  A claim has facial plausibility when the pleaded factual content allows

23  the court to draw the reasonable inference, based on the court's judicial experience and common

24  sense, that the defendant is liable for the misconduct alleged.  *See id.* at 1949-50.  "The plausibility

25  standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a

26                              2

1  complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the
2  line between possibility and plausibility of entitlement to relief." *Id.* at 1949 (internal quotation
3  marks and citation omitted).

4      In reviewing a motion to dismiss, the court accepts the facts alleged in the complaint as
5  true. *Id.* (citation omitted). However, "bare assertions . . . amount[ing] to nothing more than a
6  formulaic recitation of the elements of a . . . claim . . . are not entitled to an assumption of truth."
7  *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Iqbal*, 129 S. Ct. at 1951)
8  (alteration in original) (internal quotation marks omitted). The court discounts these allegations
9  because they do "nothing more than state a legal conclusion – even if that conclusion is cast in the
10 form of a factual allegation." *Id.* (citing *Iqbal*, 129 S. Ct. at 1951.) "In sum, for a complaint to
11 survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from
12 that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Id.* (quoting
13 *Iqbal*, 129 S. Ct. at 1949).

14 **III.    Discussion**

15     Hatcher and the Board request dismissal on the following grounds: (1) lack of standing; (2)
16 qualified immunity for all federal claims; (3) discretionary immunity for all state claims; and (4)
17 failure to state a claim upon which relief can be granted. A-1 and Phillips request dismissal for
18 failure to state a claim upon which relief can be granted. The court will address the standing and
19 immunity issues before considering the claims on their merits.

20     **A.    Standing**

21     Nevada law provides that "when a person who has a cause of action dies before judgment,
22 the damages recoverable by the decedent's *executor or administrator* include all losses or damages
23 which the decedent incurred or sustained before the decedent's death." Nev. Rev. Stat. § 41.100(3)
24 (2009) (emphasis added). This provision does not apply to any "cause of action brought by the
25 decedent's personal representatives for the decedent's wrongful death." Nev. Rev. Stat.

26                                          3

§ 41.100(3) (2009).  Accordingly, "the right to a survival action in Nevada is limited to the duly appointed representatives of a deceased's estate." *Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 370 (9th Cir. 1998).

In their complaint, Plaintiffs do not allege that any of the claims are brought by official representatives of Martinez's estate.  Instead, all claims are brought by decedent's mother and the appointed guardian of decedent's minor child.  Because Plaintiffs do not assert any claims as duly appointed representatives of Martinez's estate, Plaintiffs do not have standing under Nevada law to assert a claim for any survival actions at this time.[2]

## B.   Qualified Immunity

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 129 S.Ct. 808, 815 (2009) (internal quotation marks omitted).  "For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (citation omitted).  In essence, "[o]fficers are entitled to qualified immunity unless they have been given fair notice that their conduct was unreasonable in light of the specific context of the case." *Winterrowd v. Nelson*, 480 F.3d 1181, 1186 (9th Cir. 2007) (internal quotation marks omitted).

Before *Pearson*, courts were to decide first whether, taken in the light most favorable to the party asserting the injury, the facts alleged show that the officer's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  If there was no violation of a constitutional right,

---

[2] It appears that on January 26, 2010, Garcia petitioned the Second Judicial District Court of Nevada to be appointed "Special Administrator and Personal Representative of the Estate of Santiago Martinez." (Pls.' Supplement Resp. Mot. (#16), Ex. 1.)  At the present time, however, Plaintiffs have not filed any documents with the court establishing that Garcia has been named as an official representative of Martinez's estate. Regardless, even if Plaintiffs establish that Garcia has been appointed as an administrator, as discussed below, the court must dismiss Plaintiffs' claims on other grounds.

4

1    the official was entitled to qualified immunity.  *Id.*  If the court determined that there was a

2    constitutional violation, the court would then ask whether the constitutional right was clearly

3    established.  *Id.*  The Supreme Court no longer requires that courts address whether there was a

4    constitutional violation before deciding whether the constitutional right at issue was clearly

5    established.  *Pearson,* 129 S.Ct. at 818.  Instead, lower courts are to "exercise their sound

6    discretion in deciding which of the two prongs of the qualified immunity analysis should be

7    addressed first in light of the circumstances in the particular case at hand."  *Id.*

8           In viewing the pleadings in the light most favorable to Plaintiffs, the court finds that

9    Hatcher is entitled to qualified immunity for both federal claims because Plaintiffs have failed to

10   allege facts suggesting that Hatcher violated clearly established constitutional rights.

11                        **1.     Fourth Amendment**

12          The Fourth Amendment protects the right of the people to be free from "unreasonable

13   searches and seizures."  U.S. Const. amend IV.  "The 'reasonableness' inquiry in an excessive force

14   case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in

15   light of the facts and circumstances confronting them, without regard to underlying intent or

16   motivation."  *Graham v. Connor*, 490 U.S. 386, 397 (1989) (citation omitted).  "The

17   'reasonableness' of a particular use of force must be judged from the perspective of a reasonable

18   officer on the scene, rather than with the 20/20 vision of hindsight."  *Id.* at 396 (citation omitted).

19           In assessing reasonableness, the court should consider "the severity of the crime at issue,

20   whether the suspect poses an immediate threat to the safety of the officers or others, and whether he

21   is actively resisting arrest or attempting to evade arrest by flight."  *Blanford v. Sacramento County*,

22   406 F.3d 1110, 1115 (9th Cir. 2005) (citation omitted).  "A police officer may not seize an

23   unarmed, nondangerous suspect by shooting him dead," but if "there is probable cause to believe

24   that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not

25   constitutionally unreasonable to prevent escape by using deadly force."  *Tennessee v. Garner*, 471

26                                         5

1    U.S. 1, 11 (1985).

2        Plaintiffs allege that "Hatcher's use of deadly force was unreasonable under the

3    circumstances, and any reasonable officer in his position could not have thought that the shooting

4    was justified under the Fourth Amendment." (Compl. (#1), ¶ 8.)  Plaintiffs also allege that Hatcher

5    "engaged in an unprovoked, unnecessary, and unreasonable killing of another." (Compl. (#1), ¶

6    12.)  Finally, Plaintiffs allege that Hatcher knew that police back-up was on the way.

7        Other than the allegation concerning police back-up, Plaintiffs do not allege any specific

8    facts suggesting that Hatcher's actions were unreasonable given the circumstances.  Plaintiffs do

9    not allege that Martinez was unarmed, that Martinez was not dangerous, or that Martinez was not

10   attempting to flee the scene.  Accordingly, Plaintiffs have failed to allege facts suggesting that

11   Hatcher's action amounted to a constitutional violation of the Fourth Amendment.

12                    **2.        Fourteenth Amendment**

13       The Fourteenth Amendment prohibits a state from depriving "any person of life, liberty, or

14   property, without due process of law." U.S. Const. amend XIV, § 2.  "[O]nly official conduct that

15   'shocks the conscience' is cognizable as a due process violation." *Porter v. Osborn*, 546 F.3d

16   1131, 1137 (9th Cir. 2008) (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)).

17   There are two distinct standards used to prove that conduct "shocks the conscience": (1) the official

18   acted with "deliberate indifference"; or (2) the official acted with a "purpose to harm . . . for

19   reasons unrelated to legitimate law enforcement." *Id.*  Deliberate indifference can only be

20   employed when "actual deliberation is practical." *Lewis*, 523 U.S. at 851 (citation omitted).  On

21   the other hand, "[w]hen an officer encounters fast paced circumstances presenting competing

22   public safety obligations, the purpose to harm standard must apply." *Porter*, 546 F.3d at 1139.

23       Given the circumstances, Hatcher would not have been able to deliberate his actions.

24   Accordingly, Plaintiffs must demonstrate that Hatcher intended to inflict harm beyond that which is

25   required for legitimate law enforcement.  Although Plaintiffs allege that "the conduct of Hatcher

26                                          6

1  was done with evil motive, malice, oppression, and deliberate indifference to decedent's

2  constitutional rights and the right of the minor child to enjoy a familial relationship,"

3  (Compl. (#1), ¶ 19), Plaintiffs do not allege that Hatcher acted with the purpose to harm Martinez

4  for reasons unrelated to legitimate law enforcement.  Accordingly, Plaintiffs have failed to allege

5  facts suggesting a violation of the Fourteenth Amendment.

6      Because Plaintiffs' bare allegations do not support a claim that Hatcher violated Martinez's

7  Fourth or Fourteenth Amendment rights, Hatcher's actions are protected under the doctrine of

8  qualified immunity.  Accordingly, the court will dismiss Plaintiffs' first and second claims.

9          **C.    Discretionary Immunity**

10      In the State of Nevada, state officials and employees are immune from civil liability for "the

11  exercise or performance or the failure to exercise or perform a discretionary function or duty."

12  Nev. Rev. Stat. § 41.032(2) (2009).  The Nevada Supreme Court has adopted the Berkovitz-

13  Gaubert test, which provides that government acts are entitled to discretionary immunity if: (1) the

14  acts involved an "element of individual judgment or choice;" and (2) the decision to act was "based

15  on considerations of social, economic, or political policy."  *Martinez v. Maruszczak*, 168 P.3d 720,

16  729 (Nev. 2007).

17      With regards to the policy requirement, "[t]he focus of the inquiry is not on the agent's

18  subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of

19  the actions taken and on whether they are susceptible to policy analysis."  *United States v. Gaubert*,

20  499 U.S. 315, 325 (1991).  "For a complaint to survive a motion to dismiss, it must allege facts

21  which would support a finding that the challenged actions are not the kind of conduct that can be

22  said to be grounded in the policy of the regulatory scheme."  *Id.* at 324-25.

23          **1.    Hatcher**

24      Hatcher argues that he exercised his individual judgment when he chose to shoot Martinez

25  and that this decision carried out the policy objective of preventing a person from causing serious

26                                  7

1 bodily harm to another person.  Plaintiffs concede that Hatcher's actions were an exercise of

2 individual judgment but argue that discretionary immunity does not apply because "no policy

3 judgment was in play."  (Pls.' Resp. Mot. Dismiss (#13) 6.)

4       Nevada law permits the use of deadly force to prevent escape when there is probable cause

5 to believe that a person poses a threat of serious bodily harm to a police officer or others.  Nev.

6 Rev. Stat. § 171.1455 (2009).  In other words, Nevada law allows law enforcement agents to

7 exercise discretion when confronted with a potentially dangerous suspect.  *See Herrera v. Las*

8 *Vegas Metro. Police Dep't*, 298 F. Supp. 2d 1043, 1054 (D. Nev. 2004) (holding that "[a] police

9 officer's 'strategy for approaching [a suspect], the moment by moment decisions they [make]

10 throughout the interaction, and their ultimate use of lethal force . . . [are], as a matter of law,

11 discretionary acts'").

12       Because this Nevada statute gives the officer discretion, it is presumed that the officer's acts

13 are grounded in the policy objective of the statute.  *See Gaubert*, 499 U.S. at 324 (explaining that

14 "[w]hen established governmental policy, as expressed or implied by statute, regulation, or agency

15 guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's

16 acts are grounded in the policy of the regulatory scheme.")  Thus, the court must presume that

17 Hatcher's decision to act was based on considerations of social policy.  Hatcher is therefore entitled

18 to discretionary immunity, and the court will dismiss the claims against him for wrongful death,

19 battery, intentional infliction of emotional distress, and negligence.

20            **2.    The Board**

21       Plaintiffs allege that the Board failed to exercise reasonable care in its hiring, training,

22 supervision, and retention of Hatcher "with regards to the use of force, use of deadly force, and in

23 other material respects."  (Compl. (#1), ¶ 17.)  The Board argues that it made an individual choice

24 in determining whether to hire, how to train, how to supervise, and whether to retain Hatcher.

25       The Ninth Circuit has held that "decisions related to hiring, training, and supervision of

26                                8

1  employees usually involve policy judgments of the type Congress intended the discretionary

2  function exception to cover." *Vickers v. United States*, 228 F.3d 944, 950 (9th Cir. 2000) (citation

3  omitted).  Because Nevada looks to "federal decisional law on the Federal Torts Claims Act for

4  guidance on what type of conduct discretionary immunity protects," *Neal-Lomax v. Las Vegas*

5  *Metro. Police Dep't*, 574 F. Supp. 2d 1170, 1192 (D. Nev. 2008) (citing *Martinez*, 168 P.3d at

6  727-28), and because federal case law holds training and supervision to be entitled to such

7  immunity, the Board is entitled to discretionary immunity on this claim.  As such, the court will

8  dismiss this claim against the Board.

9          **D.     Negligence of A-1 and Phillips**

10          "A claim for negligence in Nevada requires that the plaintiff satisfy four elements: (1) an

11  existing duty of care, (2) breach, (3) legal causation, and (4) damages." *Turner v. Mandalay Sports*

12  *Entm't, LLC.,* 180 P.3d 1172, 1175 (Nev. 2008) (citation omitted).  "In a negligence action, the

13  question of whether a 'duty' to act exists is a question of law solely to be decided by the court."

14  *Lee v. GNLV Corp.*, 22 P.3d 209, 212 (Nev. 2001) (citation omitted).  "Without a duty owed, there

15  can be no actionable negligence." *Turney v. Sullivan*, 516 P.2d 738, 738 (Nev. 1973).

16          Phillips and A-1 argue that they owed no duty of care to "third persons who were damaged

17  or injured in any manner as a result of Officer Hatcher's conduct" because they were merely

18  following the commands of Hatcher.  (Defs.' Mot. Dismiss (#11) 7.)  Nevada law requires "every

19  person who, after having been lawfully commanded to aid an officer in arresting any person . . . or

20  in executing any lawful process" to aid the officer or be judged guilty of a misdemeanor.  Nev. Rev.

21  Stat. § 199.270 (2009).  The Nevada Supreme Court has clothed citizens with immunity when they

22  are obeying such laws that require cooperation with law enforcement. *County of Clark v.*

23  *Christensen*, 472 P.2d 365, 366 (Nev. 1970).  Nonetheless, here, it remains a question of fact

24  whether Hatcher lawfully commanded Phillips to aid in the pursuit of Martinez.

25          Defendants, however, have shown that A-1 and Phillips did not owe Martinez a duty of

26                                                    9

1   care. "An indispensable predicate to tort liability founded upon negligence is the existence of a

2   duty of care owed by the alleged wrongdoer to the person injured." *Mangeris v. Gordon*, 580 P.2d

3   481, 483 (Nev. 1978) (citation omitted). Plaintiffs do not allege facts suggesting that A-1 and

4   Phillips specifically owed *Martinez* a duty of care. Instead, Plaintiffs focus on A-1 and Phillips'

5   general duty to exercise reasonable care when making a vehicle available to law enforcement and

6   when pursuing another vehicle. Further, Plaintiffs do not allege sufficient facts suggesting that the

7   breach of this general duty was a cause of Martinez's death. Thus, the court will dismiss the claim

8   of negligence against A-1 and Phillips.

9        IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss (#9) is GRANTED.

10       IT IS FURTHER ORDERED that Defendants' Motion to Dismiss (#11) is GRANTED.

11       The Clerk of the Court shall enter judgment accordingly.

12       IT IS SO ORDERED.

13       DATED this 19th day of July, 2010.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE

10